UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————

№ 11-CV-4844 (JFB)(WDW)

————————————

KEITH TERRELL BUTLER,

Plaintiff,

VERSUS

SERGEANT LEWIS V. ET AL.,

Defendants.

————————————

**MEMORANDUM AND ORDER**
April 11, 2014

————————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Keith Terrell Butler ("Butler" or "plaintiff") brings this action against defendants Sheriff Vincent F. DeMarco ("DeMarco"), Sgt. Louis Viscusi (s/h/a Sgt. Lewis V.) ("Viscusi"), Thomas Sharkey ("Sharkey"), Rena Walker (s/h/a Dr. Reena Walker) ("Walker"), and C.O. Investigator Peter Cherouvis (s/h/a Security Officer Sirusso) ("Cherouvis") (collectively, "defendants"), alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims that, while he was incarcerated at the Suffolk County Correctional Facility ("SCCF"), Viscusi and Sharkey assaulted him on September 9, 2011; Cherouvis threatened plaintiff after the alleged assault; Walker refused to document that plaintiff was injured during the alleged assault; and the conditions at SCCF are unsanitary.

Defendants move for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and that he has no evidence with which to sustain his allegations against DeMarco, Cherouvis, and Walker. For the following reasons, the Court concludes that plaintiff failed to exhaust his administrative remedies, and that there are no grounds for excusing that failure.[1] Accordingly, the Court grants the defendants' motion for summary judgment.

I. BACKGROUND

A. Factual Background

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the

---

[1] Given the Court's ruling, the Court need not address defendants' alternative grounds in support of their motion.

nonmoving party. *See, e.g.*, *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it.

1. The Alleged Assault

Plaintiff entered SCCF on August 24, 2011, and was transferred to the Downstate Correctional Facility on November 8, 2011. (Def. 56.1 ¶ 1.) The complaint revolves around an incident on September 9, 2011. (Amended Complaint, at IV.)

According to a letter from Viscusi to Internal Affairs ("IA"), on September 9, 2011, Butler allegedly said that "he couldn't live in the 3 S/E tier and he was relocated to the E 2/N tier without incident [that day]. There was an incident that took place on 09/10/11 that involved inmate Butler, incident report was filed." (Viscusi Internal Affairs Letter, Butler Opp. Ex. 5.) Plaintiff claimed that he was beaten up during the move on September 9. (Interview Notes, Butler Opp. Ex. 6.) According to an Incident Report from September 10, 2011, on that day, a tied-up sheet was obstructing Sharkey's view of Butler's cell. (Incident Report, Butler Opp. Ex. 2.) Butler refused to comply with Sharkey's initial orders to take the sheet down, but he eventually took it down. (*Id.*) As Sharkey walked away, Butler yelled, "Suck my dick." (*Id.*) Sharkey reported this to Viscusi, who ordered Butler to come to the sally port. (*Id.*) Butler refused. (*Id.*) Lieutenant Sammartino then assembled an extraction team to relocate Butler to disciplinary housing. (*Id.*) According to Sammartino, the move was videotaped, and Butler was relocated without incident. (*Id.*)

According to an IA Case Status Report from February 9, 2012, Butler claimed that he received a scratch behind his left ear, a bruise to the upper right thigh, and back pain on September 9. (Internal Affairs Case Status Report, Butler Opp. Ex. 12.) Investigators found no record of any incident. (*Id.*) Butler was seen by medical personnel on September 9, but IA concluded that the medical records "suggest the ecchymosis [on the thigh] is an older resolving injury and the back pain is a continuous issue." (*Id.*)

2. Grievance Procedure

SCCF has a three-tiered formal grievance procedure, which is detailed in the SCCF Inmate Rules and Regulations Booklet (the "Inmate Handbook"). (*See* Inmate Handbook, Declaration of Jason Bassett ("Bassett Decl.") Ex. C.) Each inmate receives a copy of the Handbook upon entering the facility. (*See* Affidavit of Matthew Bogert ("Bogert Aff.") ¶ 3, Bassett Decl. Ex. A.) Plaintiff received the Inmate Handbook on August 24, 2011. (Def. 56.1 ¶ 2; *see* Bogert Aff. ¶ 4; Booking Sheet Receipt, Bassett Decl. Ex. B (Butler acknowledging receipt).)

According to the three-part grievance process, an inmate with a grievance must first complain to the correctional officer located in the inmate's cell block.[2] This grievance must be filed within five days of the incident giving rise to the grievance. If dissatisfied with the results of the first step, the inmate may file a grievance form to be

---

[2] According to Bogert, a Corrections Sergeant at SCCF, inmates may submit grievances by (1) handing them to an officer or sergeant, (2) going to the law library and placing them in a box marked "Grievances," (3) putting them in the outgoing mailbox on their tier for forwarding by the floor sergeant, or (4) mailing them via the United States Postal Services. (Bogert Aff. ¶ 8.)

2

reviewed by the Housing Sergeant assigned to an inmate's housing unit; if the issue is not there resolved, the grievance will be forwarded on to the Grievance Coordinator for further investigation, leading to a subsequent determination. The Grievance Coordinator is required to make a written determination within five business days. If an inmate is dissatisfied with the results of the preceding two steps, the inmate may appeal the grievance board's determination to the Warden. If the appeal results in an unfavorable decision, the inmate may appeal that determination to the State Commission of Correction.[3] (See SCCF Handbook, at 15–16.)

### 3. Plaintiff's Grievances

SCCF's records contain no filed grievances by plaintiff alleging an attack on his person on September 9, 2011 (or another date) by Viscusi, Sharkey, or other officers. (Bogert Aff. ¶ 6.) SCCF also has no records of any formal prisoner grievance alleging medical neglect by Walker or any other party on September 9, 2011 (or another date); unsanitary conditions at the facility; or a threat by Cherouvis or another individual against plaintiff's family or to place plaintiff in administrative segregation.[4] (Def. 56.1 ¶¶ 5–7.)

Plaintiff did file Grievance # R-2011-523, which was received by the Grievance Processing Unit on September 19, 2011. (Def. 56.1 ¶ 8; *see* Grievance R-2011-523, Bassett Decl. Ex. D (stamped "RECEIVED" on September 19).) In that grievance, signed on September 15, plaintiff complained that "Sergeant Ski" never gave anyone the three grievances plaintiff wrote on September 11, and therefore, they were not on file and nowhere to be found. (Grievance Form R-2011-523.) Plaintiff did not identify the nature of his earlier grievances. (Def. 56.1 ¶ 9.) The grievance was denied on September 21, 2011, because "Inmate Butler's grievances are being addressed and are currently on file with the Grievance Unit of the SCSO." (R-2011-523 Denial, Bassett Decl. Ex. E.) Plaintiff refused to sign the denial, but he never appealed it to the Warden or to the State Commission of Correction. (*Id.*; Def. 56.1 ¶ 11.) Another grievance, denied on September 21, 2011, addressed mental health issues. (R-2011-524 Denial, Butler Opp. Ex. 4.)

Plaintiff attached purported grievances to his opposition.[5] The first grievance,

---

[3] Plaintiff argues that the Inmate Handbook submitted by defendants is "not the actual handbook that the institution issues to prisoners." (Pl. Rule 56.1 Statement ¶ 2.) Plaintiff testified, however, that he received a copy of the Handbook when he first arrived at SCCF, and that the Handbook outlines the grievance procedure. (Butler Deposition ("Butler Dep.") at 147:13–22, Bassett Decl. Ex. F.) Therefore, plaintiff does not raise a genuine issue of fact as to the steps in the three-part grievance process, or his awareness of that process.

[4] According to plaintiff, "[t]he living conditions are unsanitary, theirs rusted bars and paint chips falling into the food, the showers are disscusting caked up milue & mole, the toilets are foul other inmates toxic waste come up in each others toilet [sic]." (Amended Complaint, at IV.)

[5] Defendants question the authenticity of these grievances and note that they have submitted evidence that plaintiff did not file any grievance regarding the alleged September 9, 2011 attack. (*See* Defs.' Reply, at 4 ("As supposed support for his wholly conclusory allegations, the plaintiff attached to his papers in opposition to defendants' motion for summary judgment a Suffolk County Sheriff's Office Grievance Form (without a Grievance Number indicating it had ever been filed) dated next to plaintiff's signature as '9/22/11'. Even if this Grievance was actually filed (which the Sworn Affidavit of Matthew Bogert – 'Exhibit A' – clearly refutes), it could not have been filed until September 22, 2011, well in excess of the five (5) day requirement for prisoner grievances clearly laid out in the Inmate Handbook ("Exhibit C")[.] As stated in defendantss [sic] original moving papers, the actual evidence conclusively establishes that plaintiff did

signed on September 22, 2011, does not have a grievance number or a "RECEIVED" stamp. (Lewis Grievance, Butler Opp. Ex. 7.) Butler complained that Viscusi, Sharkey, and others beat him on September 9, and that Viscusi threatened to throw plaintiff down the elevator shaft. (*Id.*) The second grievance, signed on September 22, 2011, also does not have a grievance number or a "RECEIVED" stamp. (Sirusso Grievance, Butler Opp. Ex. 8.) Butler complained that Viscusi threatened Butler's family and said he would put plaintiff in administrative segregation. (*Id.*) Butler also sent a letter to DeMarco on September 22, marked "Rec'd 09-27-2011," complaining that the grievances he gave on September 11 apparently disappeared, and that he was told he could not appeal other grievances. (Letter to DeMarco, Butler Opp. Ex. 9.) Butler also complained that Walker refused to document that plaintiff was beaten up. (*Id.*)

B. Procedural Background

Plaintiff filed the original complaint on September 27, 2011, and filed the amended complaint on January 5, 2012. Defendants answered on February 28, 2012. Following a report and recommendation by Magistrate Judge Wall, this Court dismissed the complaint with prejudice for failure to prosecute on April 2, 2013. The Court reopened the case on May 29, 2013. Defendants moved for summary judgment on August 30, 2013. Plaintiff opposed on November 15, 2013. Defendants replied on December 13, 2013. The Court has fully considered the submissions of the parties.

---

not file any grievance(s) regarding any attack on his person on September 9, 2011 (or any other date) by Sgt. Louis Viscusi, C.O. Thomas Sharkey, and/or any other Corrections Officers (See 'Exhibit A', paragraph 4).").)

II. STANDARD OF REVIEW

Pursuant to Rule 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola*

*v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, a party opposing summary judgment cannot "merely . . . assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has made clear that an inmate is not entitled to a jury trial on factual disputes regarding the failure to exhaust administrative remedies under the PLRA. *See Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011) (per curiam) (holding that there is no "right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA"*); see also Abdur–Rahman v. Terrell*, No. 10-CV-3092, 2012 WL 4472119, at *5 (E.D.N.Y. Sept. 25, 2012) ("Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even where there is a disputed issue of fact.").

III. DISCUSSION

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To prevail on a claim under § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). In addition, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *see Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.").

Defendants move for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. In the alternative, defendants argue that there is no evidence establishing any liability on the part of DeMarco, Cherouvis, or Walker. As set forth below, the Court concludes that plaintiff did not exhaust his administrative remedies and he has failed to show any grounds for excusing that failure. Thus, the Court grants summary judgment in favor of defendants without addressing their alternative argument.

A. <u>Failure to Exhaust</u>

Defendants argue that plaintiff cannot raise any claims under Section 1983 because

he failed to exhaust the available administrative remedies. The Court agrees.

1. Legal Standard

The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings" *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 88–90).

Prior to *Woodford*, the Second Circuit

> recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result, or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (summary order) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (summary order) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, even after *Woodford*, the Second Circuit has continued to hold that an inmate's failure to comply with the

exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d at 309 (citing the *Hemphill* factors).

As the Supreme Court has held, exhaustion is an affirmative defense. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (Report and Recommendation) ("Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

### 2. Analysis

#### a. Proper Exhaustion

"Proper exhaustion" requires a prisoner to use "'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Ruggiero*, 467 F.3d at 176 (quoting *Woodford*, 548 U.S. at 90) (emphasis in original). Although the level of detail necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones*, 549 U.S. at 218, "proper exhaustion" under the PLRA "'demands compliance with [that] agency's deadlines and other critical procedural rules,'" *Ruggiero*, 467 F.3d at 176 (quoting *Woodford*, 548 U.S. at 90). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Id.* (citing *Woodford*, 548 U.S. at 83–84); *see Woodford*, 548 U.S. at 95 ("For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. . . . We are confident that the PLRA did not create such a toothless scheme.").

Plaintiff claims he filed three grievances regarding the alleged assault on September 9, 2011. None of the grievances filed, received, and addressed by SCCF, however, mention any September 9 assault, threats by Viscusi, actions by Walker, or unsanitary conditions at SCCF. Further, the purported grievances plaintiff attaches to his opposition are dated September 22, 2011, after the five day grievance filing deadline. There also is no evidence that plaintiff appealed any grievance to the Warden or the State Commission of Correction, as required. Therefore, because plaintiff failed to file his grievances in a timely fashion (if at all) in accordance with SCCF's procedures, failed to exhaust his appeals of grievances, or both, plaintiff has failed to properly exhaust his administrative remedies. *See Medina v. Nassau Cnty. Sheriff Dep't*, No. 11-CV-228 (JFB)(GRB), 2013 WL 4832803, at *5 (E.D.N.Y. Sept. 10, 2013) (holding that plaintiff failed to exhaust remedies where grievances were deemed insufficient and plaintiff failed to supply necessary information, and plaintiff otherwise failed to appeal any grievances); *Williams v. Metro. Detention Ctr.*, 418 F. Supp. 2d 96, 101–02 (E.D.N.Y. 2005) (dismissing *pro se* complaint where plaintiff could only show he exhausted two steps of four-step process mandated by prison's guidelines); *see also Morrison v. Stefaniak*, 523 F. App'x 51, 52 (2d Cir. 2013) (summary order) (upholding dismissal because plaintiff failed to appeal the Inmate Grievance Resolution Committee's decision); *Valentine v. Lindsay*, No. 10-CV-868 (JG)(JMA), 2011 WL 3648261, at *7 (E.D.N.Y. Aug. 17, 2011) (prisoner failed to

exhaust his administrative remedies when he untimely appealed grievance).

b. Availability of Remedies

The Second Circuit has stated that, if a prisoner has failed to exhaust, the Court must determine "whether administrative remedies were in fact 'available' to the prisoner . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop . . . the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill*, 380 F.3d at 686 (internal citations omitted). It is clear that "[a]n administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (citations omitted); *see also Smith v. Woods*, No. 03-CV-480, 2006 WL 1133247, at *15 (N.D.N.Y. Apr. 24, 2006) (Report and Recommendation) ("[C]ase law exists supporting the proposition that, assuming plaintiff was instructed by prison officials, contrary to prison regulations, that he could not file a grievance, and plaintiff indeed did not initiate the grievance process by filing that grievance in reliance on that misrepresentation, the formal grievance proceeding required by the prison grievance system was never 'available' to plaintiff within the meaning of the PLRA." (internal alterations, citations, emphasis, and quotation marks omitted)).

Here, Butler does not show that SCCF's grievance procedure was not "available" to him due to misrepresentations by prison officials. *See Hemphill*, 380 F.3d at 686. There is no evidence that Butler was told that he could not file or appeal any grievances, or that his complaints involved non-grievable matters. *Cf. Williams v. Suffolk Cnty.*, No. 11-CV-5198 (JFB)(AKT), 2012 WL 6727160, at *5–6 (E.D.N.Y. Dec. 28, 2012) (officials erroneously told plaintiff that matter could not be pursued through normal grievance process); *Feliciano v. Goord*, No. 97-CV-263 (DLC), 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (denying motion to dismiss because, *inter alia*, officials told plaintiff that complaint involved non-grievable security matter). Nor has plaintiff shown that prison officials purposefully lost the September 11 grievances in order to prevent plaintiff from timely invoking his administrative remedies. Plaintiff also does not demonstrate that he was unaware of the appeals process, *see Ruggiero*, 467 F.3d at 178 (holding that inmate had not exhausted his administrative remedies when he did not claim "that he was unaware of the grievance procedures contained within [the Inmate Handbook] or that he did not understand those procedures"), or that he reasonably believed pursuing a grievance would be "futile or impossible" through the introduction of evidence regarding "prison officials' threats, beatings" or other misconduct, *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).

Plaintiff also does not demonstrate that special circumstances warrant excusal from the exhaustion requirement. Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion. *See Ruggiero*, 467 F.3d at 175 (describing "special circumstances" as "a *reasonable misunderstanding* of the grievance procedures, [thereby] justify[ing] the prisoner's failure to comply with the exhaustion requirement" (emphasis added)); *Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 433 (E.D.N.Y. 2010) ("Among the circumstances potentially qualifying as

'special' under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute cannot be grieved."). No such special circumstances are present here.

Instead, plaintiff argues that prison officials misplaced or destroyed his September 11 grievances. In *Cruz v. DeMarco*, this Court found the inmate's allegations that his grievances "just disappeared" to be conclusory and insufficient to overcome the PLRA's exhaustion requirement. *See* No. 12-cv-4277 (JFB)(GRB), 2013 WL 4719086, at *7–8 (E.D.N.Y. Sept. 3, 2013). Unlike in *Cruz*, plaintiff's contention is not conclusory. He details his attempt to file grievances on September 11, states that he gave them to Sergeant Ski, and introduces purported versions of those grievances. Plaintiff's letter to DeMarco and Grievance Form R-2011-523 also support his claim that he submitted grievances to somebody at SCCF on September 11. As a threshold matter, plaintiff cannot rely on the copies of the grievances submitted with his opposition, because there is no record of them having been filed with SCCF. *See Harris v. Loverde*, No. 08-CV-6069, 2011 WL 5080089, at *4 (W.D.N.Y. Oct. 26, 2011) (declining to rely on copy of grievance submitted with opposition because, *inter alia*, there was no evidence that it was ever filed). In any event, even assuming *arguendo* that all those grievances were filed, the Court concludes that the alleged misplacement or destruction of those grievances does not provide special circumstances warranting excusal from exhaustion, where plaintiff never followed the available procedure to challenge the alleged failure to act on his grievances. In other words, although plaintiff clearly took "some action to determine what happened with respect to the grievance[s]," *Cruz*, 2013 WL 4719086, at *7, he failed to exhaust all statutory levels of appeal of those grievances even though, in his view, the grievances were misplaced or destroyed by corrections officers. Therefore, plaintiff's assertion that his grievances were misplaced or destroyed cannot be a basis to excuse exhaustion, and summary judgment for defendants is warranted. *See, e.g.*, *id.* at *3–4 (granting defendants' motion for summary judgment where plaintiff stated that his grievance was "misplaced" but provided insufficient evidence to support his assertion, and plaintiff failed to follow up his complaint pursuant to procedure set out by facility); *Rosado v. Fessetto*, No. 09-CV-67 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse his exhaustion requirement.") (collecting cases), *report & recommendation adopted*, 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010); *LaBombard v. Burroughs-Biron*, No. 09-CV-136, 2010 WL 2264973, at *6 (D. Vt. Apr. 30, 2010) ("[T]he lack of a response did not excuse him from moving to the next step in the process, and eventually appealing to the Commissioner, if necessary, prior to filing suit"), *report & recommendation adopted*, 2010 WL 2265004 (D. Vt. June 2, 2010); *George v. Morrison*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) ("It is well-settled . . . that even when an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted." (citation and internal quotation marks omitted)); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not

relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *accord Martinez v. Williams*, 186 F. Supp. 2d 353, 357 (S.D.N.Y. 2002); *Waters v. Schneider*, No. 01-CV-5217 (SHS), 2002 WL 727025, at *2 (S.D.N.Y. Apr. 23, 2002).

Accordingly, because the evidence demonstrates that plaintiff did not exhaust his administrative remedies as required by the PLRA, and no grounds exist for excusing that failure, the Court grants defendants' motion for summary judgment for failure to exhaust.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment, and dismisses the amended complaint with prejudice.[6] The Clerk of the Court shall enter judgment accordingly and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 11, 2014
Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. Defendants are represented by Jason Bassett and Richard T. Dunne of the Suffolk County Department of Law, H Lee Dennison Building, 100 Veterans Memorial Highway, Hauppauge, NY, 11788.

---

[6] The dismissal is with prejudice because the "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004). Plaintiff is not at SCCF, and because any appeal would be untimely, plaintiff would not be able to pursue his administrative remedies as to the claims against these defendants. *See, e.g.*, *Davis v. Reilly*, 324 F. Supp. 2d 361, 366 (E.D.N.Y. 2004) ("[D]ismissal of a section 1983 complaint with prejudice is proper where the prisoner failed to exhaust administrative remedies available after a period of several months and those remedies are no longer available, partly because of the prisoner's being transferred to another correctional facility.").